LoRiNG, J.,
dissenting :
In this case a military reservation was laid off upon the land in April, 1856, by the officer then commanding the troops of the United *420 States in that quarter, and it bas been ever since in the possession of the military authorities ; and the reservation supported by this continuous possession has, since this litigation arose, been approved by the Secretary of War, whose action is in legal effect the action of the President. These facts, I think, establish the military reservation upon the land.
The commencement of the petitioner’s residence and cultivation was on July 15, 1850, and, therefore, previous to the donation act of September 27, 1850. (9 Stat., 496.) The evidence of such commencement of residence was filed October 29, 1853. The completion of the petitioner’s four years’ residence and cultivation was on July 15, 1854, and the evidence of it was filed September 1, 1859 — three years after the reservation was made. In August, 1861, five years after the reservation, a donation certificate was sent by the register of the land office for Washington Territory to the Commissioner of the General Land Office, who refused the patent because of the military reservation. These are the facts in evidence which seem to me material.
The donation act of 27th September, 1850, section 4, (9 Slat, 496,) vests title in settlers on the public lands, “ who shall have resided upon and cultivated the same for four consecutive years, and shall otherwise conform to the provisions of this act,” and those provisions are that the settler shall—
1st. File evidence of the commencement of his residence.
2d. That he shall file the evidence of the completion of his four years’ consecutive residence, &c. When he has complied with all the provisions of the act he has an equitable title, because he has paid its price. He is then entitled to a patent, and if he gets it he has the legal title. But until he has complied with all the provisions of the act, he has no title, equitable or legal, and the lands remain “ public lands,” and as such by the 14th section of the act of 1850 subject to military reservations on'the terms prescribed by that section and the 8th section of the amendatory act of February 14, 1853. (10 Stat., 158.)
On the evidence, the petitioner had not filed his ‘evidence of four years’ consecutive residence, &c., when the reservation was made in April, 1856. He had not, therefore, complied with or fulfilled the provisions of the act, on which his title was conditioned by the act, and he had then no title, equitable or legal; and I think that, by the military reservation made then, as above stated, the lands were, in the words of the 14th section of the act of 1850, then “reserved and excepted” — that is, taken and withdrawn from “ the operation” of the *421 act, so that the title of tlie petitioner could not be completed after-wards, and that the fee of the land remained in the United States, discharged of the act, and as if that had never been passed. And, consequently, I think that the petitioner did not own the land during the time for which he claims, and that his only right is, on the statutes cited, to compensation for his improvements at the time ofthe reservation, to be ascertained by the Secretary of War, and not here. (6 Attorney General’s Opinions, p. 156.)
I think the defendants entitled to judgment.